## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

MATTHEW ORVILLE JONES,          )
                                )
    Plaintiff,                  )
                                )
v.                              )
                                )    **Case No. CIV-20-746-SM**
KILOLO KIJAKAZI,                )
ACTING COMMISSIONER             )
OF SOCIAL SECURITY,             )
                                )
    Defendant.                  )

## <u>MEMORANDUM OPINION AND ORDER</u>

Matthew Jones (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). Docs. 24, 25.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings because substantial evidence does not support the Administrative Law Judge's (ALJ) residual functional capacity[1] (RFC) assessment. Doc. 26, at 6-14. He maintains the ALJ neither properly considered the treatment doctor's opinion nor comported with Social Security

---

[1]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545 (a)(1), 416.945(a)(1).

Ruling (SSR) 96-8p, 1996 WL 374184 (July 2, 1996). *See id.* After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.   Administrative determination.

### A.   Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff

---

[2]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C.   Relevant findings.

#### 1.   Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 16-24; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found that Plaintiff:

(1)   had not engaged in substantial gainful activity since April 2, 2018, the alleged onset date;

(2)   had the following severe medically determinable impairments: osteoarthrosis and allied disorders and obesity;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the RFC to perform medium work, but was limited to occasional stooping, crouching, and kneeling;

(5)   was unable to perform any past relevant work;

(6)   could perform jobs that exist in significant numbers in the national economy, such as dietary aid and laundry worker; and so,

(7)     had not been under a disability from April 2, 2018, through
        November 5, 2019.

*See* AR 16-24. The claimant bears the burden of proof through step four of the

analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006).

### 2.     Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's

request for review, *see* AR 1-6, making the ALJ's decision "the Commissioner's

final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327

(10th Cir. 2011).

## II.   Judicial review of the Commissioner's final decision.

### A.     Review standard.

The Court reviews the Commissioner's final decision to determine

"whether substantial evidence supports the factual findings and whether the

ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326,

1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less

than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139

S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.")

(internal quotation marks and citation omitted). A decision is not based on

substantial evidence "if it is overwhelmed by other evidence in the record."

*Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

**B.   Issues for judicial review.**

Plaintiff asserts that the ALJ's RFC assessment lacked substantial evidence. Doc. 26, at 6-12. Specifically, he argues the ALJ improperly discounted the treating physician's opinion, which limited Plaintiff to sedentary work with additional restrictions. *Id.*; *see* AR at 280-81 (physical assessment). He further alleges the ALJ neglected to follow SSR 96-8p, which requires a step-by-step function-by-function analysis. Doc. 26, at 12-15.

**III.   Analysis of the ALJ's decision.**

**A.   How the ALJ crafted the RFC assessment.**

In crafting Plaintiff's RFC, the ALJ considered Plaintiff's hearing testimony, the objective medical evidence (including positive and negative exam findings), Plaintiff's treatment history, and the medical source opinions. The ALJ considered all of Plaintiff's alleged impairments, especially the impact of his obesity upon his functional abilities. AR 17. The ALJ noted Plaintiff had a normal gait, providing stability and safety, and he required no assistive devices to ambulate. *Id.*

The ALJ noted that Plaintiff's 2018 disability report alleged disability due to "back problem, hip problem, high blood pressure, and leg problems." *Id.* at 18. But Plaintiff never completed the function report forms and was "uncooperative." *Id.* (Plaintiff testified he filled out "some" of the forms. *Id.* at 35.)

The ALJ next reviewed Plaintiff's testimony and his reported daily activities. *Id.* Plaintiff previously worked as a shop supervisor rebuilding and lifting hundred-pound auto transmissions, and stated his ruptured discs were preventing him from working. *Id.* Plaintiff testified he could walk no more than two blocks without resting, could stand only five minutes, took over the counter medicine for his pain, and was in pain sitting while testifying. *Id.* He also testified that he exercises and has never had any surgeries. *Id.*

As to his reported daily activities, Plaintiff testified

that his daily activities include getting up with his wife, after she goes to work, he does a little bit of dishes and then sits down. He takes a shower, gets dressed, and watches television. He stated that he does small chores around the house. Most days he does not leave the house. He sits in a recliner most of the day. His legs swell all of the time, so he tries to stay off his feet. He elevates his legs. He does no vacuuming or sweeping. He takes out the trash if it is light. He cannot mow the lawn. He sometimes puts the laundry in and move[s] clothes from washer to dryer. He stated he could not lift his grandson even when he was 15 pounds. He stated he could not pick up a gallon of milk but could not carry a five-pound bag of potatoes.

6

*Id.* at 18-19.

At this point, the ALJ made his consistency finding, in which he discounted some of Plaintiff's statements:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence generally does not support the alleged loss of functioning.

*Id.* at 19.

The ALJ reviewed Plaintiff's medical history, which spanned from April 2018 through October 2018. In April 2018, Plaintiff visited the emergency room for complaints of right-leg pain, sciatic pain, and back pain. *Id.* at 19. He received a Toradol injection and a prescription for Ultram and Robaxin, and was discharged as stable with a diagnosis of acute exacerbation of chronic low back pain, bilateral sciatica, and swelling of his left-knee joint. *Id.*

Plaintiff applied for disability benefits in May 2018, after injuring his back at work two months earlier. *See id.* at 20 (describing March 2018 workplace incident), 49 (May 4, 2018 filing date listed on disability determination).

On June 12, 2018, Dr. David Hollrah treated Plaintiff for hypertension. *Id.* at 20. He claimed to have experienced low-back problems since 2004, worsened by an injury that occurred while he was lifting a transmission in March 2018. *Id.* He has had treatment and MRIs in the past but never injections. *Id.* Dr. Hollrah stated he would "send him to either pain medicine or neurosurg[eon] if necessary after the MRI is done." *Id.* at 285. Dr. Hollrah ordered physical therapy and prescribed Losartan to treat blood pressure. *Id.* His examination showed normal gait and station, grossly intact cranial nerves II-XII, intact judgment and insight, and no digital cyanosis. *Id.* at 286.

Plaintiff had a June 28, 2018 follow-up with Dr. Hollrah to discuss MRI results. *Id.* at 20. Dr. Hollrah assessed him with chronic right-sided low-back pain with right-sided sciatica, benign essential hypertension, degenerative disc disease, lumbar, and class-two obesity due to excess calories with serious comorbidity and body mass index (BMI) of 35.0 to 35.9. *Id.* Dr. Hollrah increased Plaintiff's blood pressure medication, and Plaintiff declined pain management. Dr. Hollrah counseled Plaintiff on diet and exercise for weight loss. *Id.* Plaintiff showed no digital cyanosis; cranial nerves II-XII were intact, and he had a normal gait and station. *Id.* at 20, 288. Dr. Hollrah noted his MRI showed several areas of stenosis and degenerative disc disease. *See id.* at 20. Dr. Hollrah assessed him the same as above at a subsequent July 25, 2018

follow-up, where his chief complaint was high blood pressure. *Id.* at 20, 289. Plaintiff stated he had "been working on diet and exercise but [had] not been able to lose weight." *Id.* at 289.

Dr. Glen Hyde examined Plaintiff on September 4, 2018. *Id.* at 20, 291. At this visit, Plaintiff's chief complaint was leg swelling, and Dr. Hyde assessed him with edema in his right leg, benign essential hypertension, bilateral leg edema, and lumbar degenerative disc disease. *Id.* Dr. Hyde prescribed Lasix and Potassium Chloride. *Id.* There was no injury mechanism for the pain, which was moderate but fluctuating. *Id.* It caused loss of motion and inability to bear weight. *Id.* Plaintiff received mild relief from a combination of rest, immobilization, and acetaminophen. *Id.* at 20, 291-92. Plaintiff's musculoskeletal examination was positive for arthralgia and back pain; negative for neck pain. *Id.* at 20, 292. His neurological examination was negative for dizziness, syncope, weakness, and numbness, as well as for hallucinations and suicidal ideas, but was positive for confusion. *Id.* The claimant was not nervous or anxious and was not in acute distress. *Id.* He again had normal gait and station and no digital cyanosis. *Id.*

On September 11, 2018, Dr. Hollrah assessed Plaintiff with leg swelling, benign essential hypertension, and pain and edema in his right leg. *Id.* at 20-21, 295. The ALJ noted Plaintiff had seen Dr. Hyde for his leg pain and had a

9

negative ultrasound for deep vein thrombosis. *Id.* at 21, 295. Plaintiff showed much less swelling and pain in his right leg; he had been having some leg cramps, though intermittent and mild. *Id.* Plaintiff was still taking the Furosemide but had not been taking his Losartan. He misunderstood and thought he was to replace the Losartan with the metoprolol. *Id.* Upon physical examination, Plaintiff had 1+ peripheral edema and no color change in his right leg. *Id.* at 21, 296. Again, his musculoskeletal examination showed normal gait and station, no digital cyanosis, little-to-no tenderness in the right leg, and that cranial nerves II-XII were grossly intact. *Id.*

On October 9, 2018, Dr. Hollrah saw Plaintiff for a follow-up and medication refills, complaining of left arm and hand stiffness. *Id.* at 21, 297. Dr. Hollrah assessed Plaintiff with pain in both arms, chronic low-back pain with sciatica on the right side, and benign essential hypertension. *Id.* Dr. Hollrah prescribed Toprol-XL and Mobic. *Id.* Plaintiff had x-rays to rule out bony pathology. *Id.* Dr. Hollrah noted that a negative result meant the likely cause of Plaintiff's pain was muscle strain. *Id.* at 297. Plaintiff reported that for the prior three weeks he had experienced muscle pain in his left forearm exacerbated when he picked something up, but he could not recall an injury. *Id.* at 21, 297. Plaintiff's musculoskeletal examination showed no digital

cyanosis, that Plaintiff had normal gait and station, and that cranial nerves II-XII were grossly intact. *Id.* at 21, 298.

Plaintiff received two assessments of the severity of his injuries and the degree of their interference with his ability to work. On one end of the spectrum, Dr. Hollrah concluded in July 2018 that Plaintiff's symptoms would constantly interfere with his ability to perform simple tasks; Plaintiff would need to recline more than regular breaks would permit; he could walk one block; he could sit and stand or walk for no more than one hour in an eight-hour day; he would need a ten-minute break every thirty minutes; he could lift nothing heavy and could do no reaching or fine manipulation; he would be absent from work at least once a month. *Id.* at 280-81. Dr. Hollrah further concluded Plaintiff's impairments are reasonably consistent with his medical record and referred to an MRI. *Id.* He noted Plaintiff's MRI showed several areas of stenosis and degenerative disc disease. *Id.* at 289. But that MRI is not in the record, nor is any other.

The ALJ found Dr. Hollrah's opinion inconsistent with his treatment notes, as well as conclusory, and thus not persuasive. *Id.* at 22. In rejecting Dr. Hollrah's opinion and finding Plaintiff's symptoms and treatment inconsistent, the ALJ stated:

The claimant has had no hospitalizations for physical impairments. The claimant has had *only scant medical treatment* and *has not always been compliant* with treatment and medications. The claimant has had mainly normal physical examinations. He testified that *he takes no pain medications*, but sometimes takes Aleve. Upon several physical examinations by Dr. Hollrah, his skin had no rash, lesions or ulcers. Musculoskeletal examinations showed no digital cyanosis. *He had normal gait and station. Cranial nerves II-XII were grossly intact.* He had intact judgement and insight. He was alert and oriented times three with an appropriate affect. The claimant *has not had any surgeries, physical therapy, or epidural injections for his degenerative disc disease, lumbar.* Notes by Dr. Hollrah on June 12, 2018, showed that the claimant had MRIs in the past but not in the past few years.

Although the claimant alleges disability because of back problem, hip problem, high blood pressure, and leg problems, he has testified and *described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.* He is able to take care of his own personal needs. He testified that he exercised. He takes no pain medications. He testified that he does some household chores such as the dishes, taking out the light trash, and doing laundry. He watches television. Some days he does not leave the house. He drives. He lives with his wife and spends time with her when she is not working. He spends time with his children and grandchildren. The claimant was not cooperative and did not complete Function Reports regarding his daily activities

*Id.* at 21-22 (emphasis added).

Contrary to Dr. Hollrah's assessment, state agency physicians deemed Plaintiff "not disabled" at the initial and reconsideration levels. *Id.* at 63, 74. The state agency records show repeated attempts, over a two-month period, to contact Plaintiff via telephone and mail, met with assurances Plaintiff would

complete the required forms. *Id.* at 54-55, 72. Without Plaintiff's function report, the state agency physician could not complete an assessment of Plaintiff's physical capabilities. *Id.* Ultimately, the agency received "[n]o forms." *Id.* at 55. The agency noted Dr. Hollrah's medical source statement, but also noted "no substantiating [medical evidence of record] accompanying this." *Id.* So, the state agency physicians found Plaintiff had established no medically determinable impairments (apart from non-severe osteoarthritis and allied disorders), which meant the agency could not approve any imaging or consultative examinations. *Id.* at 55-56, 71-74. This assessment was based on a finding of insufficient evidence resulting from Plaintiff's refusal to comply with repeated requests for completion of disability reports. *Id.* at 54.

On reconsideration, the agency again called Plaintiff four times over a three-month period regarding incomplete forms. *Id.* at 80. The agency again concluded there was "insufficient evidence." *Id.* Ultimately, the state agency physicians found Plaintiff not disabled. *Id.* at 56, 74, 82. Noting that these doctors did not have the benefit of the full record of medical evidence later received at the hearing level, the ALJ found these opinions "less persuasive." *Id.* at 22.

**B.     Substantial evidence supports the ALJ's rejection of the treating physician's opinion.**

The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the ALJ evaluates the persuasiveness of medical opinions by the claimant's physician using five factors, the most important of which are supportability and consistency. *Id.* §§ 404.1520c(a), 416.920c(a); *see also Zhu v. Comm'r of Social Security*, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021).

> "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."

*Zhu*, 2021 WL 2794533, at *6 (citations omitted).

The ALJ concluded Dr. Hollrah's records, while corroborating some physical limitations, did not unequivocally support the extreme restrictions he imposed. As the ALJ noted, the scant medical evidence spans a seven-month period. AR 22, 266-98. And as discussed *supra* § III.A., the ALJ specifically found inconsistencies between Dr. Hollrah's opinions, his treatment notes, and

14

the objective medical evidence as a whole. AR 22. Dr. Hollrah also arrived at his opinion during his third visit with Plaintiff. *See Blevins v. Colvin*, 2014 WL 1246761, at *5 (D. Kan. Mar. 26, 2014) (affirming decision where "[t]he ALJ gave little weight to [the examiner]'s opinions because the opinions were based on a single evaluation of the plaintiff and there was no treatment relationship"); 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3) (explaining "[r]elationship with the claimant" factor, including "[l]ength of the treatment relationship" and "[f]requency of examinations").

Based on all this, the ALJ concluded that Dr. Hollrah did not clearly explain the basis of his opinion, given its lack of support in the record as a whole. AR 22. It remains the ALJ's responsibility to resolve any conflicts between Dr. Hollrah's and the state agency physicians' opinions. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016). So, because the physicians' opinions of record could support either a finding that Plaintiff had severe physical restrictions or a finding that such restrictions were not as severe as alleged, the ALJ "was entitled to resolve such evidentiary conflicts and did so." *Allman*, 813 F.3d at 1333.

In addition, the ALJ bases his assessment on "all of the relevant medical evidence and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); SSR 96-8p, 1996 WL 374184, at *2, 5. The Court finds that the ALJ did not err by

15

picking a middle ground. *Thurston v. Colvin*, 2016 WL 6905901, at *5 (D. Kan. Nov. 22, 2016) ("Based on the . . . conflicting medical and medical opinion evidence, the court finds no clear error in the ALJ's evaluation of the medical evidence or in the ALJ's RFC findings.").

Plaintiff argues the ALJ's reason for rejecting Dr. Hollrah's opinion—only that it was conclusory and inconsistent—is too vague for this Court to meaningfully review. Doc. 26, at 8-9. However, the ALJ explained that Dr. Hollrah's opinion was not persuasive because Dr. Hollrah's own treatment notes show improvement in Plaintiff's leg swelling, only conservative treatment, no physical therapy, and no hospitalizations. AR 21, 22. This is hardly conclusory.

"Given the nature and limits of [this Court's] review, and given as well the detailed reasons offered by the ALJ for rejecting Dr. [Hollrah's] opinion, [this Court does] not second-guess [her] decision." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001), *as amended on denial of reh'g* (Apr. 5, 2002) (holding that the ALJ did not err in discrediting the plaintiff's treating physician's opinions where the ALJ concluded that it was backed up by insufficient evidence and "that it failed to explain the discrepancy between, on the one hand, an increasingly restrictive functional assessment and, on the other, x-ray images of [claimant's] back showing little or no physical change in her

16

condition"). This Court is "unable to now reweigh that evidence and substitute [its] judgment for [the ALJ's]." *Id.*

In connection with his argument that substantial evidence does not support the RFC, Plaintiff charges the ALJ played doctor in crafting the RFC assessment, "magically arriv[ing]" at the conclusion Plaintiff could perform medium work. Doc. 31, at 5. While an ALJ cannot substitute her own lay opinions for those given by a medical expert, that is not what happened here. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *see also* 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (listing factors to be considered by ALJ in evaluating medical opinions). Rather, as discussed *supra* § III.A., the ALJ proffered an adequate explanation for rejecting Dr. Hollrah's opinion and determined Plaintiff's RFC based on the evidence of record. The Court finds no error. *See Trujillo v. Colvin*, 626 F. App'x 749, 752-53 (10th Cir. 2015) (ALJ was not "playing doctor" when analyzing physician's opinion "against the backdrop of the other . . . evidence."); *Sylvia Lee v. Berryhill*, 2017 WL 2892338, at *5 (W.D. Okla. June 15, 2017) (The ALJ's statement that "findings from examination do not support the alleged severity of [Plaintiff's] complaints" was not an example of the ALJ "playing doctor," but instead "st[ood] for the proposition that the medical evidence d[id] not support the level of severity of

the impairments alleged by [the plaintiff]."), *adopted*, 2017 WL 2880862 (W.D. Okla. July 6, 2017).

Indeed, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotations and citations omitted); *see also Corber v. Massanari*, 20 F. App'x 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, but it is also well within the province of the ALJ." (citations omitted)). Although it may be inappropriate for the ALJ to reach an RFC assessment without expert medical assistance when her determination seriously conflicts with the medical opinions, *Wells v. Colvin*, 727 F.3d 1061, 1072 (10th Cir. 2013), the Court concludes that is not the case here because the ALJ reached an RFC within the range of two different medical opinions. *See Smith*, 821 F.3d at 1268 (upholding ALJ's decision where, "[f]aced with the conflicting opinions, the administrative law judge adopted a middle ground"); *Chapo*, 682 F.3d 1288 ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").

Furthermore, any gaps in the record appear attributable to Plaintiff's refusal to fill out the necessary paperwork and counsel's failure to bolster Dr. Hollrah's "inconsistent" and "conclusory" disability finding, AR 22, by requesting further medical examinations. "[I]f the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'" *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997)). Plaintiff's counsel made no such request before the ALJ, nor does Plaintiff's counsel here. Accordingly, the Court finds the ALJ did not commit reversible error in adopting physical limitations within the bounds of the state agency physicians' and Dr. Hollrah's opinions. *See Smith*, 821 F.3d at 1268.

Because the ALJ was not required to credit Dr. Hollrah's opinion in crafting the RFC and was entitled to resolve discrepancies between the medical opinions in the record, the Court finds that substantial evidence supports the ALJ's RFC assessment.

### C.    The ALJ's RFC assessment complied with SSR 96-8p.

SSR 96-8p prescribes the rules an ALJ must follow when making an RFC assessment. SSR 96-8p explains that the RFC entails a "function-by-function assessment" of an individual's ability to do work-related activities. SSR 96-8p,

1996 WL 374184, at *3 (July 2, 1996). This function-by-function assessment must occur before the RFC may be expressed in terms of the exertional levels of work (e.g., light, medium, heavy). *Id.* at *1.

To carry out the function-by-function assessment, the ALJ must evaluate "the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* at *5. The ruling also specifically requires that "[e]ach function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities." *Id.* (emphasis added). As the ruling explains, "it is necessary to assess the individual[']s capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." *Id.* at *3 (emphasis added).

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The Court "agree[s] with the Commissioner that the ALJ's RFC determination is supported by a proper narrative statement, as well as substantial evidence." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

"When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citation omitted). Here, the ALJ found that the claimant could perform "'medium' work as defined in 20 C.F.R. [§§] 404.1567(c) and 416.967(c)," with the previously mentioned additional postural limitations. AR 17-18. Plaintiff complains that the ALJ did not specifically enunciate the sit/stand/walk and lift/carry/push/pull limitations. Doc. 26, at 12-14.

The regulatory definition states that medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c); 416.967(c). Furthermore, social security regulations state that

> [a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time. Use of the arms and hands is necessary to grasp, hold, and turn objects, as opposed to the finer activities in much sedentary work, which requires precision use of the fingers as well as use of the hands and arms.

SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

The ALJ provided a narrative discussion of the evidence, including the claimant's daily living and functioning, and the medical opinions in the record, Plaintiff's medical history and compliance with directions. The Court follows the ALJ's reasoning and understands what the limitation to medium work entails. *See Hendron*, 767 F.3d at 956 ("[The claimant] asserts that, in assessing her RFC without an explicit function-by-function analysis, the ALJ overlooked her problems with sitting. We disagree."); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))). Here, the ALJ's treatment of the medical evidence satisfies SSR 96-8p. Plaintiff's assertion of this technical error, without more, is insufficient to warrant remand or reversal. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

**IV.  Conclusion.**

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 7th day of September, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE